**Shirley HENSLIN, dba Car Transportation Company, Plaintiff,**

v.

**ROAASTI TRUCKING, INC., a California corporation, et al., Defendants.**

No. CV-F-92-5335 DLB.

United States District Court, E.D. California.

Feb. 25, 1993.

William J. Sarras, Tustin, CA, for plaintiff.

Steven Ray Williams, Visalia, CA, for The Great Atlantic & Pacific Tea Co., defendant.

Marion I. Quesenbery, Irvine, CA, for A.T.B. Packing Co., William Bolthouse Farms, Inc., Hi Value Processors, Inc., The Nunes Co., Inc., Fruit Salad, Inc. and Kleinman & Hochberg, Inc., defendants.

Susan S. Halling, San Francisco, CA, for Dole Fresh Vegetables Co., Inc., defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BECK, United States Magistrate Judge.

This is a collection action wherein Plaintiff, Shirley Henslin, dba Car Transportation Company (Henslin), seeks to obtain payment for three (3) loads of produce which Henslin transported by truck between the various Defendants. Henslin alleges federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and 49 U.S.C. § 10501 *et seq.*, the Interstate Commerce Act. Although it is not alleged in the complaint on file herein, Plaintiff maintains in her motion for summary judgment that Car Transportation Company is a motor carrier licensed by the Interstate Commerce Commission (ICC) (Plaintiff's Memorandum of Points and Authorities in Support of Summary Judgment page 12, lines 4–5). The parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. 636(c).

In her complaint, Plaintiff maintains in the fourth claim for relief that on or about July

26, 1990, she transported a shipment from Defendant, A.T.B. Packing Co.'s (ATB) facility in Turlock, California to Defendant, Fruit Salad in Lawrence, Massachusetts and that freight fees in the amount of four thousand four hundred and sixteen dollars ($4,416) are due and unpaid.

In the fifth claim, Plaintiff alleges on or about June 20, 1990, she transported goods in a single shipment from: Defendant, William Bolthouse Farms, Inc.'s (Bolthouse) facility in Bakersfield, California; Defendant, Dole Fresh Vegetables, Inc.'s (Dole) Miami facility at Oxnard, California; and from Defendant, The Nunes Co., Inc.'s (Nunes) facility in Salinas, California to Defendant, The Great Atlantic & Pacific Tea Co.'s (A & P) facility in Edison, New Jersey and that four thousand four hundred dollars ($4400) is due and unpaid.

Finally, in the sixth claim Henslin alleges that on or about June 10, 1990 she transported goods by truck from Defendant, Hi Value Processors, Inc.'s (Hi Value) facility in Blythe, California to Defendant, Kleiman and Hochberg, Inc.'s (Kleiman) facility in Bronx, New York and that four thousand two hundred dollars ($4200) in freight charges is due and unpaid.

It is uncontested that each of these shipments were shipments of produce, an agricultural commodity within the meaning of 49 U.S.C. § 10526(a)(6)(B). It is also undisputed that arrangements for each of these shipments were made by one or more of the Defendants with Defendant, Roaasti Trucking, Inc. and, at least in the case of the shipment which is alleged to be the subject of the fifth claim, that Roaasti has been paid all sums due for the shipment.

Plaintiff moves for summary judgment contending that each of the Defendants were either consignors or consignees and, pursuant to 49 U.S.C. § 10744 and *Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982) and *Maislin Industries U.S., Inc.*

*v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), each are liable for payment of the motor carrier fees in spite of the fact that they may have paid Defendant Roaasti Trucking, Inc. for the freight charges.

Each of the Defendants has filed a cross motion for summary judgment maintaining that the shipment(s) involved agricultural commodities which are exempt from regulation by the Interstate Commerce Commission (ICC) pursuant to 49 U.S.C. § 10526(a)(6)(B).

Defendant Dole has also filed a cross motion for summary judgment on the grounds that it was not a consignor within the meaning of the Interstate Commerce Act since all arrangements for shipping were made by Defendant A & P and the terms of the sale of produce between Dole and A & P were FOB Dole's Minami plant in Oxnard, California.[1]

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted where "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...."

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This responsibility is simply one of pointing out to the District Court that there is an absence of evidence to support the non-movant's case, it is not the responsibility of producing evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. at 2554.

1. This same argument appears to apply to both Bolthouse and Nunes since it is clear from A & P's declaration in support of summary judgment that A & P made all arrangements for shipment of the produce involved in the fifth claim and

that the terms of purchase from Bolthouse and Nunes were also FOB. However, Defendants Bolthouse and Nunes have not moved for summary judgment on this ground.

## AGRICULTURAL COMMODITY EXEMPTION

It is undisputed that each of the shipments involved in the remaining claims in this action consisted of agricultural commodities which are exempt from the jurisdiction of the Interstate Commerce Commission pursuant to 49 U.S.C. § 10526(a)(6)(B). Plaintiff maintains however, that the exemption of agricultural commodities applies only to the ICC's jurisdiction over the *motor vehicles* which transport the agricultural commodities. Henslin maintains that her position is supported by three of the handful of cases decided concerning exempt commodities, *East Texas Motor Freight Lines v. Frozen Food Express*, 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917 (1956); *Interstate Commerce Commission v. Dunn*, 166 F.2d 116 (5th Cir. 1948); and *Interstate Commerce Commission v. Service Trucking*, 186 F.2d 400 (3rd Cir.1951).

However, Henslin relies primarily on *Fawley Motor Lines v. Cavalier Poultry Corp.*, 235 F.2d 416 (4th Cir.1956). In *Fawley* the Fourth Circuit Court of Appeals found that a "... common carrier by motor vehicle which had obtained a certificate of convenience and necessity and filed tariffs with the Interstate Commerce Commission ..." was bound by those tariffs even in the shipment of an exempt product (dressed poultry). Plaintiff relies specifically on a quote from *Fawley* which states:

> The owner of a motor vehicle may use it for the purpose of transporting agricultural commodities in interstate commerce without obtaining a certificate of convenience and necessity, filing tariffs or complying with any other provisions of the act; but there is nothing in this exemption which forbids common carriers hauling agricultural commodities or filing tariffs to cover such hauling or which exempts them from the binding effect of the tariffs so filed. A carrier must abide by its published rates. (Citation Omitted)

*Fawley*, 235 F.2d 416 at 418.

When *Fawley* was decided, the agricultural commodity exemption, then 49 U.S.C. § 303(b)(6), read as follows:

> Vehicles excepted from operation of law

> (b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include

> ....

> (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation.

*Fawley, Id.* at 418 quoting in pertinent part from 49 U.S.C. § 303(b)(6).

What Plaintiff ignores and Defendants fail to point out is that the agricultural commodity exemption has changed considerably. In 1978, Section 303 was repealed and the bulk of the exemption was renumbered and moved from 49 U.S.C. § 303 to 49 U.S.C. § 10526. The amendment of 49 U.S.C. § 10526(a)(6)(B) to its current form was accomplished as part of the Motor Carrier Act of 1980. Specifically, section 21 of the Act struck out the former language of 49 U.S.C. § 10526(a)(6) "a motor vehicle carrying, for compensation, only property and that property consists of" and substituted therefore "transportation by motor vehicle". Section 10526 *now* reads:

### Section 10526. Miscellaneous motor carrier transportation exemptions

(a) The Interstate Commerce Commission does not have jurisdiction under this subchapter over—

> . . . . .

(6) *transportation by motor vehicle of*—

> . . . . . .

(B) agricultural or horticultural commodities (other than manufactured products thereof);

28 U.S.C. § 10526(a)(6)(B).

Section 21 of the Act also added a new section, 49 U.S.C. § 10528 which reads as follows:

### Section 10528. Mixed loads of regulated and unregulated property

A motor carrier of property providing transportation exempt from the jurisdiction of the Commission under paragraph (6), (8), (11), (12), or (13) of section 10526(a) of this subchapter may transport property under such paragraph in the same vehicle and at the same time as property which the carrier is authorized to transport under a certificate issued under section 10922(b) of this subtitle or under a permit issued under section 10923 of this subtitle. Such transportation shall not effect the unregulated status of such exempt property or the regulated status of the property which the carrier is authorized to transport under such certificate or permit.

49 U.S.C. § 10528.

The legislative history regarding Section 21 of the Motor Carrier Act of 1980 reads as follows:

### SECTION 21. MIXED LOADS

This section of the bill authorizes motor carriers to transport in the same vehicle mixed loads of regulated and exempt commodities. It also makes clear that such mixing does not effect the status of the vehicle, the unregulated status of the exempt commodities or the regulated status of the property being transported under a Commission-issued certificate or permit.

In the past, the courts have interpreted statutory language exempting the transportation of certain agricultural commodities to mean that the transportation is exempt only if the motor vehicles being used are not used at the same time to transport regulated property. Consequently, the exempt commodities lose their exempt status if they are moved in the same vehicle and at the same time as commodities which are regulated. Further, there has been some question as to whether a vehicle which is used at any time for the performance of a regulated transportation becomes tainted and thus no longer qualifies under the exemption as one in which unregulated commodities can

be moved. The Committee believes that when interpreted in this manner, the current statute precludes the maximum use of carriers' equipment which results in inefficient operations and unnecessary consumption of fuel. The change in the statute permitting mixed loads of regulated and exempt commodities should increase the use of carriers' equipment and thereby improve their operating efficiency. In turn, that should lower the carriers' costs and the costs to their customers.

S.R.P. No. 96–641, H.R.P.R.P. No. 96–1069, 96 Cong. at 34 (1980), 3 U.S.Code Congressional and Administrative News, 96 Cong. 2nd Session 1980 2316.

The amendment of 49 U.S.C. § 10526 and the addition of Section 10528 rendered the Fourth Circuit Court of Appeals interpretation of the exemption in *Fawley* obsolete. The clearly expressed Congressional intent to allow mixed loads of regulated and unregulated commodities is directly contrary to Plaintiff's argument herein that use of an ICC registered carrier, who has obtained a certificate of necessity and filed tariffs with the ICC, is, in effect, a waiver of any exemption for agricultural commodities. Additionally, Plaintiff's argument that the exemption applies only to the motor vehicle is contrary to the plain reading of the statute as amended by the 1980 Motor Carriers Act.

Accordingly, the court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion for summary judgment on the grounds that there is no federal question jurisdiction with respect to the fourth, fifth and sixth claims. It is undisputed that each of the shipments at issue included only agricultural products exempt from the jurisdiction of the Interstate Commerce Commission. Because the shipments were exempt from ICC jurisdiction and the rate and tariff requirements, Plaintiff may not avail herself of the provisions of 49 U.S.C. § 10744 regarding liability for payment of filed rates.

Accordingly, it appearing that there is no federal question jurisdiction, the court ORDERS that the fourth, fifth and sixth claims of Plaintiff's complaint be dismissed for lack of subject matter jurisdiction.

The court's ruling above renders Defendants' other grounds for summary judgment moot and therefore the court declines to rule on any or all of them.